UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

THERESE PESCE,                                                  Civil Action No.


                            Plaintiff,


    -against-                                          **COMPLAINT**

MENDES & MOUNT, LLP,
MARK HICKS, individually,                          Plaintiff Demands a Trial
EILEEN MCCABE, individually,                       By Jury
JEFFREY HUTCHINSON, individually,
JAIMIE GINZBERG, individually,
CAROLINA SALAZAR, individually,
RICHARD MILAZZO, individually,
MARIA RIVERA, individually,
AUDREY WILSON, individually,
JOSEPH DEVIRGILIO, individually,
FRANCINE LAHM, individually,



                         Defendant.
-----------------------------------------------------------------------X


      Plaintiff, **THERESE PESCE**, (hereinafter referred to as "Plaintiff" or "PESCE"), by and

through Plaintiff's attorneys, **DEREK SMITH LAW GROUP, PLLC,** as and for Plaintiff's

Complaint in this action against the Defendants, **MARK HICKS** (hereinafter referred to as

"HICKS"), **EILEEN MCCABE** (hereinafter referred to as "MCCABE"), **JEFFREY**

**HUTCHINSON** (hereinafter referred to as "HUTCHINSON"), **JAIMIE GINZBERG**

(hereinafter referred to as "GINZBERG"), **CAROLINA SALAZAR** (hereinafter referred to as

"SALAZAR"), **RICHARD MILAZZO** (hereinafter referred to as "MILAZZO"), **MARIA**

**RIVERA** (hereinafter referred to as "RIVERA"), **AUDREY WILSON** (hereinafter referred to

as "WILSON"), **JOSEPH DEVIRGILIO** (hereinafter referred to as "DEVIRGILIO"),

**FRANCINE LAHM** (hereinafter referred to as "LAHM") hereinafter collectively referred to as "Defendants", respectfully alleges as follows:

## NATURE OF THE CLAIMS

1. This action is brought to remedy, *inter alia*, Defendants' unlawful discrimination against Plaintiff PESCE with respect to Plaintiff's employment on the basis of sex and gender, along with a hostile work environment, and retaliation as a result of Plaintiff's opposition to these unlawful practices. Through their unlawful and discriminatory conduct, Defendants violated Plaintiff's rights pursuant to, *inter alia*, Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e et. Seq. ("Title VII"), 42 U.S.C. § 2000e et. Seq. ("Title VII"), 42 U.S.C. §1981, New York State Human Rights Law; New York Executive Law, § 290, et seq. ("the Executive Law"); the Administrative Code of the City of New York 8-107 et seq. ("NYCHRL"); and any and all other causes of action which are alleged and/or can be inferred from the facts set forth herein.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 in that the action involves federal questions, because the causes of action asserted herein arise in part under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C § 2000e et. Seq. ("Title VII"), and 42 U.S.C. § 1981 ("1981"), to remedy violations of the laws of the State of New York and City of New York based upon the supplemental jurisdiction of this Court pursuant to *United Mine Workers of America v. Gibbs*, 383 U.S. 715 (1966) and 28 U.S.C. § 1367, seeking declaratory and injunctive relief and damages to redress the injuries Plaintiff suffered as a result of being discriminated against, and retaliated against by

Plaintiff's former employer on the basis of Plaintiff's sex/gender, as well as a hostile work environment.

3. 28 U.S.C. §1331 states that "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

4. Plaintiff filed a complaint with the Equal Employment Opportunity Commission on May 31, 2018.

5. Plaintiff received a Notice of Right to Sue letter on February 29, 2019.

6. Plaintiff satisfied all administrative prerequisites and is filing this case within ninety (90) days of receiving the Right to Sue Letter.

7. Venue is proper in this District based upon the fact that the events or omissions which gave rise to the claims asserted herein occurred within the Southern District of New York.

## PARTIES

8. Plaintiff PESCE is an individual female.

9. At all times relevant to this Complaint, Defendant MENDES & MOUNT, LLP employed Plaintiff PESCE as a Paralegal.

10. At all times material, Defendant MENDES & MOUNT, LLP, (hereinafter referred to as "MENDES") is a Domestic Registered Limited Liability Partnership with its principal place of business located at 750 Seventh Avenue, New York, NY, 10019-6829. According to its website, Defendant MENDES & MOUNT, LLP is a Law Firm.

11. Upon information and belief, at all times relevant to this Complaint, Defendant MENDES & MOUNT, LLP was, and still is, a Domestic Registered Limited Liability Partnership authorized to do business in the state of New York, located and operated in New York, New York.

12. At all times material, Defendant MARK HICKS (hereinafter referred to as "HICKS") was and is a client of Defendant MENDES.

13. At all times material, Defendant MENDES employed Defendant EILEEN MCCABE (hereinafter referred to as "MCCABE") as a Partner. Defendant MCCABE held a supervisory position at Defendant MENDES, controlling many tangible aspects of Plaintiff's job duties, including holding the power to control Plaintiff's work, discipline Plaintiff, and hire and fire Plaintiff.

14. At all times material, Defendant MENDES employed Defendant JEFFREY HUTCHINSON (hereinafter referred to as "HUTCHINSON") as Chief Information Officer. Defendant HUTCHINSON held a supervisory position at Defendant MENDES, controlling many tangible aspects of Plaintiff's job duties, including holding the power to control Plaintiff's work, discipline Plaintiff, and hire and fire Plaintiff.

15. At all times material, Defendant MENDES employed Defendant JAIMIE GINZBERG (hereinafter referred to as "GINZBERG") as an Associate Attorney.

16. At all times material, Defendant MENDES employed Defendant CAROLINA SALAZAR (hereinafter referred to as "SALAZAR") as an Associate Attorney.

17. At all times material, Defendant MENDES employed Defendant RICHARD MILAZZO (hereinafter referred to as "MILAZZO") as a Partner. Defendant MILAZZO held a supervisory position at Defendant MENDES, controlling many tangible aspects of Plaintiff's job duties, including holding the power to control Plaintiff's work, discipline Plaintiff, and hire and fire Plaintiff.

18. At all times material, Defendant MENDES employed Defendant MARIA RIVERA (hereinafter referred to as "RIVERA") as Human Recourses Director. Defendant RIVERA held a supervisory position at Defendant MENDES, controlling many tangible aspects of

Plaintiff's job duties, including holding the power to control Plaintiff's work, discipline Plaintiff, and hire and fire Plaintiff.

19. At all times material, Defendant MENDES employed Defendant AUDREY WILSON (hereinafter referred to as "WILSON") as Executive Director. Defendant WILSON held a supervisory position at Defendant MENDES, controlling many tangible aspects of Plaintiff's job duties, including holding the power to control Plaintiff's work, discipline Plaintiff, and hire and fire Plaintiff.

20. At all times material, Defendant MENDES employed Defendant JOSEPH DEVIRGILIO (hereinafter referred to as "DEVIRGILIO") as Head of Security.

21. At all times material, Defendant MENDES employed Defendant FRANCINE LAHM (hereinafter referred to as "LAHM") as Human Recourses Director. Defendant LAHM held a supervisory position at Defendant MENDES, controlling many tangible aspects of Plaintiff's job duties, including holding the power to control Plaintiff's work, discipline Plaintiff, and hire and fire Plaintiff.

22. Upon information and belief, at all times relevant to this Complaint, Defendants meet the definition of an "employer" under all applicable state and local statutes.

## FACTUAL ALLEGATIONS

### Background and 1989 Incident

23. In 1989, Plaintiff worked for Defendant MENDES as a Paralegal. She worked out of MENDES' New York and London office, alternating every few weeks.

24. Defendant MENDES paid for an apartment occupied by Plaintiff and another paralegal.

25. When Plaintiff arrived from New York, she witnessed a man, MARK HICKS (hereinafter referred to as "HICKS"), a claims handler for one of Defendant MENDES' clients, laying on

what was to be her bed with five pictures of her by his side. He laid there with his arms crossed at his chest and a smile on his face.

26. Late one night in 1989, HICKS broke into Plaintiff's apartment and stood in her room, watching her sleep, with her passport in his right hand.

27. HICKS then stole Plaintiff's passport and fled the apartment.

28. Plaintiff reported this incident to the United States Embassy.

29. A subsequent investigation discovered, among other things, a "shrine" HICKS created dedicated to Plaintiff.

30. The shrine consisted of multiple photographs of Plaintiff and was adorned with lights on both sides and a light above.

31. As a result of this incident, Plaintiff was forced to leave the country for her own safety. The United States Embassy granted Plaintiff a Waiver of Passport Requirement, which indicated she was granted the waiver as an emergency situation. Plaintiff later returned to the USA.

32. In the 1990s, Plaintiff stopped working for Defendant MENDES.

## 2013 Re-Hire

33. In 2013, Defendant employee Partner EILEEN MCCABE (hereinafter referred to as "EILEEN") contacted Plaintiff.

34. Defendant MENDES subsequently re-hired Plaintiff to work in the New York office, located at 750 7th Ave. #24, New York, NY 10019.

35. Defendants thoroughly documented the 1989 incident with HICKS, and EILEEN personally knew about the incident at the time of Plaintiff's re-hire with the firm. Many of the same partners who worked at the firm in 1989 remained with the firm in 2013 and remain there to date.

36. Moreover, in December of 2014, Plaintiff overheard two Defendant employees, Associate JAIMIE GINZBERG (hereinafter referred to as "GINZBERG") and Partner CAROLINA SALAZAR (hereinafter referred to as "SALAZAR"), discussing the incident in front of her. Plaintiff told them she was the woman they were discussing.

### 2015 Incident

37. In November or October of 2015, Plaintiff heard from other employees that a client from the United Kingdom was walking around the 24th floor of Defendant's office (where Plaintiff's office was), almost in circles as if he was looking for someone or something.

38. Plaintiff then saw HICKS in the hallway but, given the years since the incident, she did not immediately recognize him.

39. HICKS then entered Plaintiff's office, and Plaintiff asked him, "Who are you here to see?"

40. HICKS said he had come because he saw her name on a bill and had to see her.

41. At this point, Plaintiff knew it was HICKS.

42. HICKS then described an incident approximately ten years prior where he had watched her walk into the office of her previous employer.

43. Plaintiff, terrified at hearing this story, stood up to escort HICKS out of the office.

44. HICKS then sexually assaulted Plaintiff, cornering Plaintiff behind her desk, grabbing her, putting his arms around her, and trying to kiss her.

45. Plaintiff wriggled away from HICKS and proceeded out the door.

46. Plaintiff then escorted HICKS down to the attorney in charge of HICKS's account, Defendant employee Partner RICH MILAZZO (hereinafter referred to as "MILAZZO").

47. Plaintiff subsequently reported the incident to GINZBERG and SALAZAR.

48. In response, GINZBERG laughed.

49. Both GINZBERG and SALAZAR agreed he should not be in the office again. However, Defendants took no corrective action.

50. As a result, Plaintiff suffered fear and severe anxiety at work, wondering if HICKS would return and knowing there was no plan implemented to protect her from sexual harassment, stalking, and sexual assault.

## 2017 Incidents

51. In March of 2017, Plaintiff noticed HICKS leaning on the wall in the hallway outside her office.

52. Plaintiff later found out that MILAZZO allowed HICKS into the office.

53. Plaintiff noticed HICKS before he noticed her.

54. Plaintiff, terrified, ran into Defendant employee Paralegal MATT EMERICH's (hereinafter referred to as "EMERICH") office.

55. EMERICH tried to call Human Resources, but no one answered.

56. Plaintiff and EMERICH opened the door.

57. Plaintiff fled the room and as she did, she observed HICKS sitting in Defendant employee MARY ANN D'AMATO's (hereinafter referred to as "D'AMATO") office.

58. D'AMATO later told Plaintiff, "It's obvious he's using me to talk to you because he left mid-conversation to see if you're there."

59. Plaintiff left the building and went out to the street, where she ran into Defendant employee PHIL KERINS (hereinafter referred to as "KERINS"), who stated that HICKS was still in the office.

60. Plaintiff went back to the office and proceeded to the 23rd floor where Human Resources is located.

61. No one from Human Resources was present, so Plaintiff spoke to Defendant employee HUTCHINSON about the situation.

62. HUTCHINSON told Plaintiff to find DEVIRGILIO, the Head of Security for the office.

63. Plaintiff later emailed Defendant employee Executive Director AUDREY WILSON (hereinafter referred to as "WILSON"). Plaintiff did not hear from WILSON about the HICKS situation until July.

64. In the middle of March, Plaintiff had a meeting with Defendant employee Human Resources Director MARIA RIVERA (hereinafter referred to as "RIVERA") to discuss HICKS.

65. Defendant devised a "security protocol," and emailed the protocol company wide. Defendant printed a copy of the email and posted it on the wall near Defendant's reception area for all to see.

66. The "security protocol" stated that HICKS must be escorted up to his attorney's office, and he was not allowed to be in Defendant's office alone.

67. Plaintiff was informed that HICKS would be escorted up by DEVIRGILIO when he is in the building and that DEVIEGILIO would be with HICKS at all times when HICKS was not with an attorney.

68. Furthermore, Defendant stated Human Resources would provide Plaintiff with advanced notice of HICKS's visits.

69. In July of 2017, Plaintiff was at work when DEVIRGILIO told her that HICKS was coming to the office the following day. However, in direct violation of the "protocol," Plaintiff did not receive any notice from WILSON or Human Resources.

70. That next day, because Plaintiff did not receive any notice, Plaintiff had a panic attack while on the train.

71. Plaintiff went to work, sent an email expressing her fear of HICKS, and left immediately.

**2018 Incident**

72. In or about the middle of March of 2018, Plaintiff was told HICKS would come into the office sometime that week.

73. Specifically, the receptionist informed Plaintiff that HICKS would be in the office on Thursday, but KERINS told Plaintiff that HICKS would be in the office on Friday.

74. Plaintiff did not know if he was coming at all, as she had not been notified by Human Resources or any managerial or supervisory staff.

75. Moreover, if he was coming, she did not know which day.

76. She further did not want to lose another personal benefit day.

77. Plaintiff asked KERINS, "Are you sure it's Friday? The receptionist told me Thursday."

78. KERINS confirmed it was Friday and he was coming to see MILAZZO.

79. KERINS further told MILAZZO to be careful about HICKS and told MILAZZO that he should contact Human Resources because there was an incident. KERINS did not go into detail about the incident.

80. Despite there being a "security protocol" and despite MILAZZO being with the firm throughout the entirety of this situation, including being the person who let HICKS into the building previously, MILAZZO responded, "I don't have all the details."

81. On Thursday, March 15, 2018, Plaintiff received a call from the receptionist, whispering, "He's coming up, I've gotta go. [*sic*]"

82. Seconds later, the receptionist calls back, "He's here, not with Joe."

83. Plaintiff panicked, as Defendant's floor could be accessed without a pass from the reception area.

84. Plaintiff received an email from Defendant employee Secretary HILDA MORENO

(hereinafter referred to as "MORENO"), which asked, "hey you ok?"

85. Plaintiff responded, "No. My heart is racing and I'm shaking. I was told he is sitting on 22 with no one with him."

86. MORENO responded, "LET HELENE TO CALL YOU IF HE MOVES TO THE STAIRS OR ELEVATOR. [*sic*]"

87. She called DEVIRGILIO, but he was unavailable.

88. She called Defendant employee Human Resources Director FRANCINE LAHM (MARIA's replacement, hereinafter referred to as "LAHM"), but she was unavailable.

89. She called WILSON, but she was unavailable.

90. Plaintiff began to have a panic attack in the office. Defendant's employee Robert Flannery (hereinafter referred to as "FLANNERY") witnessed Plaintiff having a panic attack and asked what was going on, but Plaintiff was unable to speak due to her anxiety and fear.

91. Thereafter, when Plaintiff calmed down, Plaintiff told  FLANNERY about HICKS and FLANNERY responded that he had no idea, despite the protocol that was in place.

92. Ultimately, Plaintiff's cousin called the police.

93.  LAHM told Plaintiff to go home.

94. After Plaintiff went home, around 3:30 PM, LAHM called Plaintiff. LAHM stated that Plaintiff embarrassed the partners in the firm and that the client always comes first. LAHM further stated that Thursday would be counted as a personal benefit day, and if she stayed home Friday, it would also be a personal benefit day, again in retaliation for her complaints against one of Defendant's clients.

95. Plaintiff was still unaware if HICKS would be at the office on Friday.

96. LAHM told Plaintiff if she did not come into the office on Friday, she would lose another personal benefit day.

97. Plaintiff asked, "How will you keep me safe?"

98. LAHM, annoyed by Plaintiff's concerns of sexual harassment and assault and wanting to dissuade Plaintiff from further complaints, responded, "We stand by our security protocol. He's a client first and we need to make sure he's comfortable."

99. Thereafter, Plaintiff worked from home on Friday, March 16, 2018, for fear of her safety.

100. In retaliation for her complaints against Defendant's client, Plaintiff lost a personal benefit day for her absence.

101. Upon information and belief, other paralegals are permitted to work from home and do not lose personal benefit days. These courtesies are not extended to Plaintiff despite the hostile work environment, sexual harassment, and sexual assault she has experienced in the workplace.

102. Defendants discriminated Plaintiff on the basis of Plaintiff's sex and gender, and because Plaintiff complained or opposed the unlawful conduct of Defendants related to the above protected classes.

103. Defendants retaliated against Plaintiff for engaging in protected activity.

104. The above are just some examples of the unlawful discrimination, hostile work environment, and retaliation to which Defendants subjected Plaintiff.

105. As a result of Defendants' unlawful and discriminatory actions, Plaintiff has endured unlawful humiliation resulting in extreme emotional distress, severe depression, extreme anxiety, and physical ailments.

106. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

107. As a result of Defendants' unlawful and discriminatory actions, Plaintiff has endured financial hardships and irreparable damage to Plaintiff's professional reputation.

108.  As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation, which such employment entails. Plaintiff has also suffered pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff further claims aggravation, activation, and/or exacerbation of any preexisting condition.

109.  As Defendants' actions were malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages against Defendants, jointly and severally.

110.  Plaintiff claims alternatively (in the event Defendants Claim so or that the Court determines) that Plaintiff is an Independent Contractor, and Plaintiff makes all applicable claims for the above conduct and facts under the applicable law pertaining to Independent Contractors.

111.  Plaintiff claims a continuous practice of discrimination and makes all claims herein under the continuing violations doctrine.

**AS A FIRST CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER TITLE VII**
**(As against the Defendant Company/Corporation and Not Against Individual Defendants)**

112.  Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

113.  Title VII states in relevant part as follows:

(a) Employer practices: It shall be an unlawful employment practice for an employer:

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or

privileges of employment, because of such individual's race, color, religion, sex, or

national origin;

114.    This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil

Rights Act of 1964, 42 U.S.C. Section(s) 2000e et seq., as amended, for relief based upon the

unlawful employment practices of the above-named NYU. Plaintiff complains of NYU's

violations of Title VII's prohibition against discrimination in employment based, in whole or

in part, upon an employee's sex/gender or race.

115.    Defendant MENDES & MOUNT, LLP engaged in unlawful employment practices

prohibited by 42 U.S.C. §2000e *et seq.*, by subjecting Plaintiff to discrimination on the basis

of Plaintiff's sex/gender, together with causing a hostile work environment based on the

same.

116.    MENDES & MOUNT, LLP engaged in unlawful employment practices prohibited by 42

U.S.C. 2000e et seq., by harassing and otherwise discriminating against Plaintiff as set forth

herein.

117.    MENDES & MOUNT, LLP violated the above and Plaintiff suffered numerous damages

as a result.


### AS A SECOND CAUSE OF ACTION
### FOR RETALIATION UNDER TITLE VII
### (As against the Defendant Company/Corporation and Not Against Individual Defendants)

118.    Plaintiff repeats and re-alleges each and every allegation contained in the above

paragraphs of this Complaint.

119.    Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-3(a) provides that

it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against

any of his employees . . . because she has opposed any practice made an unlawful

employment practice by this subchapter, or because she has made a charge, testified, assisted
or participated in any manner in an investigation, proceeding, or hearing under this
subchapter."

120.    Defendant MENDES & MOUNT, LLP engaged in unlawful employment practices
prohibited by 42 U.S.C. 2000e *et seq.* by discriminating against Plaintiff with respect to the
terms, conditions or privileges of employment because of Plaintiff's opposition to the
unlawful employment practices of Defendants.

121.    MENDES & MOUNT, LLP violated the above and Plaintiff suffered numerous damages
as a result.

### AS A THIRD CAUSE OF ACTION
### FOR DISCRIMINATION UNDER STATE LAW
### (AGAINST ALL DEFENDANTS)

122.  Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs
of this Complaint.

123.  New York State Executive Law § 296 provides that "1. It shall be an unlawful
discriminatory practice: (a) For an employer or licensing agency, because of an individual's
age, race, creed, color, national origin, sexual orientation, military status, sex, disability,
predisposing genetic characteristics, [Effective January 19, 2016: familial status,] marital
status, or domestic violence victim status, to refuse to hire or employ or to bar or to
discharge from employment such individual or to discriminate against such individual in
compensation or in terms, conditions or privileges of employment."

124.  Defendants engaged in an unlawful discriminatory practice by discriminating against the
Plaintiff because of Plaintiff's sex/gender, as well as creating a hostile work environment
based on Plaintiff's membership in the aforementioned protected classes.

125.  Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law Section 296.

126.  Defendants violated the above and Plaintiff suffered numerous damages as a result.


## AS A FOURTH CAUSE OF ACTION
## FOR RETALIATION UNDER STATE LAW
## (AGAINST ALL DEFENDANTS)

127.  Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

128.  New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he has opposed any practices forbidden under this article."

129.  Defendants engaged in an unlawful discriminatory practice by retaliating against and otherwise discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of Plaintiff's opposition to the unlawful practices of Defendants.

130.  Plaintiff makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law Section 296.

131.  Defendants violated the above and Plaintiff suffered numerous damages as a result.


## AS A FIFTH CAUSE OF ACTION
## FOR AIDING AND ABETTING UNDER STATE LAW
## (AGAINST ALL DEFENDANTS)

132.  Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

133. New York State Executive Law §296(6) further provides that "It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so."

134. Defendants engaged in an unlawful discriminatory practice by aiding, abetting, compelling and/or coercing the unlawful, discriminatory, and retaliatory conduct as stated herein.

135. Plaintiff makes a claim against Defendants under all of the applicable paragraphs of New York State Executive Law Section 296.

136. Defendants violated the above and Plaintiff suffered numerous damages as a result.

**AS A SIXTH CAUSE OF ACTION**
**FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE**
**(AGAINST ALL DEFENDANTS)**

137. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

138. The Administrative Code of the Code of City of NY § 8-107 [1] provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienate or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

139. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff as set forth herein.

140. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York City Administrative Code Title 8.

141. Defendants violated the above and Plaintiff suffered numerous damages as a result.


## AS A SEVENTH CAUSE OF ACTION
## FOR RETALIATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## (AGAINST ALL DEFENDANTS)

142. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

143. The New York City Administrative Code Title 8, §8-107(1) (e) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter. . . "

144. Each of the Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Tide 8, §8-107(1) (e) by discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

145. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York State City Administrative Code Title 8.

146. Defendants violated the above and Plaintiff suffered numerous damages as a result.


## AS AN EIGHTH CAUSE OF ACTION FOR AIDING AND ABETTING
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## (AGAINST ALL DEFENDANTS)

147. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint.

148. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

149. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling, and coercing the above discriminatory, unlawful, and retaliatory conduct.

150. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York City Administrative Code Title 8.

151. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A NINTH CAUSE OF ACTION
## <u>FOR INTERFERENCE UNDER THE NEW YORK CITY ADMINISTRATIVE CODE</u>
## <u>(AGAINST ALL DEFENDANTS)</u>

152. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint with the same force and effect as if fully set forth herein.

153. New York City Administrative Code Title 8-107(19) Interference with protected rights states, in relevant part: It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in the exercise or enjoyment of, or on account of his or his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section.

154. Defendants violated the section cited herein as set forth.

155. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS A TENTH CAUSE OF ACTION FOR SUPERVISOR LIABILITY
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE
## (AGAINST ALL DEFENDANTS)

156. Plaintiff repeats and re-alleges each and every allegation contained in the above paragraphs of this Complaint with the same force and effect as if fully set forth herein.

157. New York City Administrative Code Title 8-107(13) entitled Employer liability for discriminatory conduct by employee, agent or independent contractor provides:

    a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

    b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

        i. The employee or agent exercised managerial or supervisory responsibility; or

        ii. The employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

        iii. The employer should have known of the employee's or agents discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

158. Defendants violated the above and Plaintiff suffered numerous damages as a result.

## AS AN ELEVENTH CAUSE OF ACTION
## <u>FOR VIOLATIONS OF THE GENDER MOTIVATED VIOLENCE PREVENTION ACT</u>
## <u>(AGAINST DEFENDANT HICKS)</u>

159.    Plaintiff repeats and re-alleges each and every allegation contained in the above

paragraphs of this Complaint.

160.    N.Y. ADC. LAW § 8-903 states in relevant part "For purposes of this chapter: a. "Crime

of violence" means an act or series of acts that would constitute a misdemeanor or felony

against the person as defined in state or federal law or that would constitute a misdemeanor

or felony against property as defined in state or federal law if the conduct presents a serious

risk of physical injury to another, whether or not those acts have actually resulted in criminal

charges, prosecution, or conviction. b. "Crime of violence motivated by gender" means a

crime of violence committed because of gender or on the basis of gender, and due, at least in

part, to an animus based on the victim's gender.

161.    N.Y. ADC. LAW § 8-904 : NY Code – Section 8-904: Civil Cause of Action states in

relevant part "Except as otherwise provided by law, any person claiming to be injured by an

individual who commits a crime of violence motivated by gender as defined in section 8-903

of this chapter, shall have a cause of action against such individual in any court of competent

jurisdiction for any or all of the following relief: 1. compensatory and punitive damages; 2.

injunctive and declaratory relief; 3. attorneys' fees and costs; 4. such other relief as a court

may deem appropriate."

162.    N.Y. ADC. LAW § 8-905 Limitations states in relevant part: "a. A civil action under this

chapter must be commenced within seven years after the alleged crime of violence motivated

by gender as defined in section 8-903 of this chapter occurred. . . . c. Nothing in this section

requires a prior criminal complaint, prosecution or conviction to establish the elements of a cause of action under this chapter.

163.    Defendant HICKS' conduct constitutes crimes of "violence motivated by gender" under The Victims of Gender-Motivated Violence Protection Act ("VGMVPA").

164.    Defendant HICKS violated the above and Plaintiff suffered numerous damages as a result.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in an amount which exceeds the jurisdiction of all lower courts for all damages including but not limited to compensatory damages, punitive damages, statutory damages, lost wages, back pay, front pay, attorney's fees, costs, interest and all other damages as are just and proper to remedy Defendants' unlawful employment practices.

### <u>JURY DEMAND</u>

Plaintiff demands a trial by jury as to all issues so triable.

Date:   May 27, 2019

New York, New York

Respectfully Submitted,

**DEREK SMITH LAW GROUP, PLLC.**

Attorneys for Plaintiff

By:   /s/ Ishan Dave
Ishan Dave, Esq.
1 Pennsylvania Plaza, 49th Floor
New York, New York 10119
(212) 587-0760