UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────────

THERESE PESCE,

                        Plaintiff,

           -v-

MENDES & MOUNT, LLP, et al.,

                      Defendants.

19-CV-4922 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

      Plaintiff Therese Pesce brings this action against Defendants Mendes & Mount, LLP ("Mendes"), Mark Hicks, Eileen McCabe, and Audrey Wilson, claiming that Mendes violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and that all Defendants violated New York State Human Rights Law, N.Y. Exec. Law § 296 *et seq.*, and New York City Human Rights Law, Admin. Code of the City of N.Y. § 8-107. Defendants Mendes, McCabe, and Wilson (collectively, the "Firm Defendants") now move to dismiss Pesce's amended complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the Firm Defendants' motion to dismiss is granted in part and denied in part.

**I.    Background**

      The following facts, taken from the operative complaint, are assumed true for purposes of this motion to dismiss.

      Plaintiff Therese Pesce began working as a paralegal for Mendes, a law firm, in 1989. (Dkt. No. 20 ("Compl.") ¶ 16.) When she started, Pesce was co-staffed between the firm's New York and London offices. (*Id.*) While working in the London office, Pesce encountered Mark Hicks, a Mendes client. (Compl. ¶ 12.) Hicks developed an infatuation with Pesce, and twice in

1989 broke into her apartment, which was provided to Pesce by Mendes.  (Compl. ¶¶ 17–19.)  The first time he entered Pesce's apartment, Hicks lay on her bed and surrounded himself with photographs of her.  (Compl. ¶ 18.)  When Pesce arrived at the apartment, she discovered him in that state.  (*Id*.)  The second time, Hicks entered the apartment at night, watched Pesce sleep, and stole her passport.  (Compl. ¶ 19.)  Pesce reported the incident to the U.S. Embassy, and a subsequent investigation discovered that Hicks had created a "shrine" of pictures of Pesce, decorated with lights.  (Compl. ¶¶ 21–23.)  Pesce left London to protect herself and subsequently left her job at Mendes.  (Compl. ¶¶ 24–25.)

In 2013, Eileen McCabe, a partner at Mendes, contacted Pesce and rehired her to work as a paralegal in Mendes's New York office.  (Compl. ¶¶ 26–27.)  Pesce alleges that McCabe, along with numerous other partners at the firm, knew about and had documentation of the 1989 incident involving Hicks.  (Compl. ¶ 28.)  Indeed, Pesce overheard two colleagues discussing the 1989 incident in December 2014.  (Compl. ¶ 29.)

In either November or December of 2015, Pesce encountered Hicks in the hallway of Mendes's New York office but did not immediately recognize him.  (Compl. ¶ 31.)  Hicks then entered Pesce's office, she recognized him, and he told her that he had watched her from afar after the 1989 incident.  (Compl. ¶¶ 31, 34–35.)  Pesce became frightened and stood to escort Hicks out of her office.  (Compl. ¶ 36.)  Hicks then cornered Pesce behind her desk, put his arms around her, and attempted to kiss her.  (Compl. ¶ 37.)  Pesce "wriggled away" and escorted Hicks to the Mendes partner in charge of his account.  (Compl. ¶¶ 38–39.)  Pesce reported the incident to two fellow employees, one of whom was Pesce's supervisor.  (Compl. ¶ 41.)  Both employees agreed that Hicks should no longer be allowed in the office, but no corrective action

was taken.  (Compl. ¶ 43.)  Pesce experienced fear and anxiety as a result of the 2015 incident.  (Compl. ¶ 44.)

In March 2017, Pesce again encountered Hicks outside her office.  (Compl. ¶ 45.)  The Mendes partner in charge of Hicks's account had let him into the New York office.  (Compl. ¶ 46.)  Pesce fled to a colleague's office to avoid Hicks.  (Compl. ¶ 49.)  As Pesce was hiding in her colleague's office, Hicks checked Pesce's office to see if she was there.  (Compl. ¶¶ 52–53.)

Pesce notified several Mendes employees, including the Executive Director and the Human Resources Director of the firm, about the situation.  (Compl. ¶¶ 56, 60–61.)  In response, the Human Resources Director created a "security protocol" regarding Hicks, "emailed the protocol company wide," and posted the protocol on the "wall near [the] reception area."  (Compl. ¶¶ 61–63.)  The protocol required that Hicks be "escorted up to his attorney's office" and always accompanied while within the office.  (Compl. ¶¶ 64–65.)  Human Resources would also provide Pesce with advance notice of Hicks's visits.  (Compl. ¶ 66.)

The protocol was first "tested" in July 2017.  A colleague, but not a member of Human Resources, informed Pesce that Hicks would be coming to the office the following day.  (Compl. ¶ 67.)  Because she did not receive notice of Hicks's visit from Human Resources, Pesce worried that the security protocol had not been implemented.  (Compl. ¶¶ 67–69.)  She had a panic attack and left work shortly after arriving.  (*Id.*)

Again in March 2018, Pesce was notified by colleagues, but not by a member Human Resources, that Hicks would be coming into the office.  (Compl. ¶¶ 70–73.)  Despite being warned by a partner that Hicks would arrive on Friday (Compl. ¶ 76), on Thursday, the Mendes receptionist called Pesce to tell her that Hicks was "coming up" and that he was unaccompanied.  (Compl. ¶¶ 79–80.)  Pesce tried to contact Security, Human Resources, and the Executive

3

Director of the firm, but she was unable to get in touch with anyone. (Compl. ¶¶ 85–88.) Pesce then experienced a panic attack. (Compl. ¶ 89.) Pesce informed her cousin of the situation, and her cousin called the police. (Compl. ¶ 91.) After this call, the Human Resources Director reached out to Pesce and told her to go home. (Compl. ¶ 92.)

At home, Pesce received a call from the Human Resources Director, who stated that Pesce had "embarrassed the partners in the firm and that the client always comes first." (Compl. ¶ 93.) The Human Resources Director then informed Pesce that "Thursday would be counted as a personal benefit day, and if she stayed home Friday, it would also be a personal benefit day." (*Id.*) The Human Resources Director did not let Pesce know whether Hicks would be at the firm on Friday (Compl. ¶ 94), instead reiterating that Hicks was "a client first" and that Mendes needed to "make sure he's comfortable." (Compl. ¶ 97.) Pesce perceived that the Human Resources Director was "annoyed" by her "concerns of sexual harassment and assault." (*Id.*)

Pesce worked from home on Friday and was docked an additional personal benefit day. (Compl. ¶¶ 98–99.) Pesce alleges that other Mendes employees were, on occasion, "permitted to work from home and . . . not lose personal benefit days." (Compl. ¶ 100.)

On May 31, 2018, Pesce filed a complaint with the Equal Opportunity Employment Commission ("EEOC"), claiming that Firm Defendants "allow[ed] her to be subjected to a hostile work environment," "discriminated against [her] because of her sex/gender," and "subjected" her to "retaliatory conduct." (Dkt. No. 24-2 ¶¶ 83, 89.) She received an EEOC right-to-sue letter on February 29, 2019, and filed this action on May 27, 2019. (Compl. ¶ 5.) On February 4, 2020, Pesce amended her complaint (Compl.), and on February 24, 2020, the Firm Defendants moved to dismiss the amended complaint. (Dkt. No. 22.)

**II.     Legal Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In considering the motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1 (2002).  And while "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678, the Court must draw "all inferences in the light most favorable to the nonmoving party[]," *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).

**III.    Discussion**

The Firm Defendants seek dismissal of Pesce's amended complaint in its entirety.  (Dkt. No. 23.)  They argue that (1) Pesce's hostile work environment claim is time-barred and, in any event, relies on an isolated incident rather than objectively severe and pervasive conduct; (2) her discriminatory-action claim[1] fails because she did not suffer an adverse employment action because of her sex; and (3) her retaliation claim fails because she cannot show that her loss of personal benefit days was an adverse employment action related to her engagement in a protected activity.  The Firm Defendants also argue that (4) the Court should decline to exercise supplemental jurisdiction over Pesce's state and city law claims.  Each argument is addressed in turn.

---

[1] The first cause of action in Pesce's complaint, "<u>DISCRIMINATION UNDER TITLE VII</u>" (Compl. ¶¶ 112–17), "can be divided into a discriminatory action claim and a hostile work environment claim," *Patane v. Clark*, 508 F.3d 106, 109 n.1 (2d Cir. 2007).

5

### A. Pesce's Hostile Work Environment Claim

#### 1. Timeliness

"Plaintiffs asserting claims under Title VII . . . must first file a complaint with the Equal Opportunity Employment Commission (EEOC) . . . within 300 days of the allegedly discriminatory action." *Gindi v. N.Y. City Dep't of Educ.*, 786 F. App'x 280, 282 (2d Cir. 2019) (citations omitted); *see also* 42 U.S.C. § 2000e-5(e)(1). Pesce filed an EEOC complaint against Firm Defendants on May 31, 2018, more than 300 days after her last interaction with Hicks. Because Pesce and Hicks did not interact when Hicks visited the office in March 2018, the Firm Defendants assert that the events surrounding this visit cannot support Pesce's hostile work environment claim. (Dkt. No. 23 at 10.) Thus, the Firm Defendants contend, Pesce's hostile work environment claim under Title VII should be dismissed as time-barred "because no actionable conduct occurred within the statute of limitations period." (Dkt. No. 23 at 9.)

The Court disagrees. "Where a continuing violation can be shown, the plaintiff is entitled to bring suit challenging all conduct that was a part of that violation, even conduct that occurred outside the limitations period." *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994) (citation omitted). A continuing violation arises when an employer allows "specific and related instances of discrimination . . . to continue unremedied for so long as to amount to a discriminatory policy or practice." *Id*. The instances of discrimination need not be "widespread" or part of a formal policy to constitute a continuing violation; a plaintiff can establish a continuing violation based on her employer's "inaction" in addressing sex-based discrimination against her alone. *Fitzgerald v. Henderson*, 251 F.3d 345, 362 (2d Cir. 2001) ("[T]he continuing violation theory may be applied where there is a showing of specific and related instances of discrimination against a single plaintiff." (citations omitted)). Here, Pesce has plausibly alleged facts indicating a continuing violation.

6

Pesce alleges that on three separate occasions, each of which the Firm Defendants were aware of, Hicks sexually harassed or abused her. Pesce alleges that on a fourth occasion, Hicks entered the Mendes office to seek her out, and she avoided him only by hiding in a colleague's office and eventually leaving the building. (Compl. ¶¶ 48–54.) Notwithstanding the threat that Hicks posed to Pesce from 1989 onward, the Firm Defendants continued to host him in their offices on a regular basis. The Firm Defendants failed to give Pesce advance notice of Hicks's visits and allowed Hicks to spend time in the office unmonitored. The Firm Defendants' multi-year failure to ensure that Pesce could work at Mendes without fearing sexual harassment and assault may constitute a continuing violation of Title VII. Accordingly, the Court concludes that the March 2018 incident, which occurred within 300 days of Pesce filing her EEOC complaint, enables Pesce to challenge the specific and related instances that Pesce alleges took place in 2015 and 2017.

### 2.   Objective Severity and Pervasiveness

To maintain a sex-discrimination hostile work environment claim under Title VII, a plaintiff must plead conduct that is, *inter alia*, "objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive." *Patane*, 508 F.3d at 113 (internal quotation marks omitted) (quoting *Gregory v. Daly*, 243 F.3d 687, 691–92 (2d Cir. 2001)). The Firm Defendants argue that Pesce cannot meet this standard, emphasizing that Hicks's only nonconsensual physical contact with Pesce was his attempt to kiss her in 2015. (Dkt. No. 23 at 11.) They contend that the events of the 2015 incident are the only pertinent events for Pesce's claim because Pesce successfully evaded Hicks when he visited the Mendes office in March 2017, July 2017, and March 2018. (Dkt. No. 23 at 12.)

Contrary to the Firm Defendants' view, Pesce alleges a hostile work environment based not on a single 2015 incident but on Hicks's repeated inappropriate conduct and the Firm

7

Defendants' repeated failure to alert her to and protect her during Hicks's visits to the Mendes office.  The question before the Court is whether Hicks's conduct and the Firm Defendants' inaction left Pesce "faced with 'harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.'"  *Patane*, 508 F.3d at 113 (quoting *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003)).  This is a "fact-bound" inquiry "that is particularly ill-suited to [resolution] at the pleading stage."  *Torres v. N.Y. Methodist Hosp.*, No. 15-cv-1264, 2016 WL 3561705, at *9 (E.D.N.Y. Jan. 7, 2016) (citation and internal quotation marks omitted).

Assessing the totality of the circumstances, and noting that the Second Circuit has "repeatedly cautioned against setting the bar too high" for "establishing a hostile work environment," *Terry*, 336 F.3d at 148, the Court concludes that dismissal of Pesce's Title VII claim is unwarranted.  Hicks broke into Pesce's Mendes-provided apartment twice in 1989, nonconsensually grabbed and attempted to kiss Pesce in the Mendes office in 2015, and attempted to locate Pesce while unsupervised in the Mendes office in March 2017.  *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1305 (2d Cir. 1995) ("[E]ven a single incident of sexual assault sufficiently alters the conditions of the victim's employment and clearly creates an abusive work environment for purposes of Title VII liability."), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998).  The Firm Defendants took no meaningful steps to prevent Hicks from interacting with Pesce in the Mendes office.  They continued to host Hicks in the office, unsupervised and without advance notice to Pesce.  Although the Firm Defendants promulgated a security protocol regarding Hicks, they failed to implement it.  Moreover, the Firm Defendants made clear that Pesce's efforts to protect herself from Hicks — by working

8

from home if he might be in the office — would be viewed as Pesce's failure to put the client first and would result in her loss of personal benefit days.

Altogether, Pesce plausibly alleges that the Firm Defendants required her to risk being sexually harassed, and potentially assaulted, in the office or lose benefits. A reasonable employee would find that this choice altered the conditions of her employment for the worse, thus satisfying the "objectively severe or pervasive" element of Pesce's hostile work environment claim. *See Patane*, 508 F.3d at 113–14. Pesce's hostile work environment claim survives the Firm Defendants' motion to dismiss.

### B.  Pesce's Discriminatory-Action Claim

The Firm Defendants also argue that Pesce fails to state a discriminatory-action Title VII claim because Pesce has not plausibly alleged that she suffered a material adverse employment action because of her sex. (Dkt. No. 23 at 12.) Defendants are correct.

To maintain her discriminatory-action claim, Pesce must allege that "she was subject to a[] specific gender-based adverse employment action." *Patane*, 508 F.3d at 112. This requires Pesce to identify direct, gender-based treatment by the Firm Defendants, not by Hicks. *Id.*; *see also Terry*, 336 F.3d at 138 ("Examples of materially adverse changes include termination of employment, a demotion evidenced by decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." (internal quotation marks and citation omitted)). Nowhere, however, does Pesce allege that the Firm Defendants docked her personal benefit days because of her sex. Instead, Pesce explicitly "characterizes [these actions] as retaliatory and not gender-based," *Patane*, 508 F.3d at 112, in her amended complaint. (*See, e.g.,* Compl. ¶ 99 ("In retaliation for her complaints against Defendant's client, Plaintiff lost a personal benefit day for her absence.").) Furthermore, Pesce does not allege that the Firm Defendants chose not to

9

protect her from Hicks because of her sex. *See Patane*, 508 F.3d at 112 ("Nor does [the complaint] allege that any male employees were given preferential treatment when compared to Plaintiff.").

As the Firm Defendants argue, Pesce cannot establish that they "took any adverse action against her based on her sex." (Dkt. No. 23 at 14.) The discriminatory-action claim must be dismissed.

### C. Pesce's Retaliation Claim

To maintain her Title VII retaliation claim, Pesce "must demonstrate that '(1) she engaged in protected activity; (2) [Firm Defendants were] aware of that activity; (3) [she] suffered a materially adverse action; and (4) there was a causal connection between the protected activity and that adverse action.'" *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 14 (2d Cir. 2014) (citing *Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012)). The Firm Defendants argue that Pesce's retaliation claim fails because Pesce has not alleged that she engaged in any protected activity that resulted in a material adverse action. Specifically, the Firm Defendants contend that Pesce's only cognizable protected activity occurred in 2015, when she reported Hicks's inappropriate conduct to her supervisor; Pesce does not allege that she lost personal benefit days as a result of the 2015 incident. The Firm Defendants also challenge whether Pesce's loss of personal benefit days can be construed as a materially adverse action "because personal benefit days are *paid* days off" and Pesce does not allege that she was docked any income. (Dkt. No. 23 at 15 (emphasis in original).)

The Court disagrees with the Firm Defendants' narrow view of Pesce's protected activity. "Protected activity is action taken to protest or oppose statutorily prohibited discrimination." *Natofsky v. City of New York*, 921 F.3d 337, 354 (2d Cir. 2019) (internal quotation marks and citation omitted). "[T]he Second Circuit recognizes both formal and informal complaints as

protected activity." *Schaper v. Bronx Lebanon Hosp. Ctr.*, 408 F. Supp. 3d 379, 391 (S.D.N.Y. 2019) (citation omitted).  In *Borrero v. Collins Building Services*, this Court held that a "call to the police," by an employee who believes herself "threaten[ed] . . . in a sexual manner," could constitute protected activity.  No. 01-cv-6885, 2002 WL 31415511, at *10, 14 (S.D.N.Y. Oct. 25, 2002).  Pesce plausibly alleges that she engaged in protected activity in March 2018.  When Hicks arrived in the office, Pesce expressed concerns about her safety to her colleagues, she reached out to Mendes's Human Resources Director, and her cousin contacted the police.  These activities, not the activities of 2015, undergird Pesce's retaliation claim.

The amended complaint clearly outlines the causal link between Pesce's activities and her loss of personal benefit days.  Pesce alleges that Mendes's Human Resources Director was "annoyed by [her] concerns of sexual harassment and assault" and stated that Pesce had "embarrassed the partners in the firm."  (Compl. ¶¶ 93, 97.)  After chastising Pesce for failing to put the client first, the Human Resources Director "further stated that Thursday would be counted as a personal benefit day, and if she stayed home Friday, it would also be a personal benefit day."  (Compl. ¶ 93.)  Pesce, who worked in the office for part of Thursday and worked from home on Friday, alleges that this treatment of personal benefit days was unusual, as "other paralegals [were] permitted to work from home and . . . not lose personal benefit days."  (Compl. ¶ 100.)  The Human Resources Director's frustration with Pesce and Mendes's typical work-from-home policy both suggest "that . . . retaliation was a 'but-for' cause" of Pesce's loss of personal benefit days.  *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018) (internal quotation marks and citation omitted).

Pesce's loss of personal benefit days may constitute a material adverse action.  Contrary to the Firm Defendants' suggestion, this loss is not the kind of "petty slight[] or minor

11

annoyance[] that often take[s] place at work and that all employees experience." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citation omitted).  Indeed, in *Valerio v. City of New York*, the Court held that an employee suffered a material adverse action when he was "involuntarily placed on leave." No. 18-cv-11130, 2020 WL 353749, at *5 (S.D.N.Y. Jan. 21, 2020).  As *Valerio* explains, "timing matters" for taking leave, and an employer cannot force an employee to squander her paid time off.  *Id*.  Even though Pesce was not docked any income for reporting her concerns about Hicks, she did suffer a material adverse action and may pursue her retaliation claim.

### D. Remaining State and City Law Claims

Finally, the Firm Defendants argue that the Court should, if it dismisses Pesce's federal claims, decline to exercise supplemental jurisdiction over her state and city law claims.  (Dkt. No. 23 at 16.)  Because several of Pesce's Title VII claims survive Firm Defendants' motion to dismiss, so too must her parallel state and city law claims.

## IV. Conclusion

For the foregoing reasons, the Firm Defendants' motion to dismiss is GRANTED in part and DENIED in part.  The motion at Docket Number 17 is DENIED as moot.

Defendants are ordered to file an answer to the remaining claims within 21 days after the date of this Opinion and Order.

The Clerk of Court is directed to close the motions at Docket Numbers 17 and 22.

SO ORDERED.

Dated: November 30, 2020
       New York, New York

_____
J. PAUL OETKEN
United States District Judge